UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL SILJEE and SUSAN SILJEE, <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC STEWARDSHIP BANK, <br><br> Defendant. | Civ. No. 15-cv-1762 (KM) <br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

I.  **Introduction**

This federal court action, filed on March 10, 2015, arises from a state court mortgage foreclosure action which went to final judgment on November 19, 2014. Paul and Susan Siljee, as borrowers and property owners, here sue their mortgagee, Atlantic Stewardship Bank ("Atlantic"). Their various causes of action allege various forms of misconduct in connection with the mortgage. In essence, however, they seek to undo the state court judgment of foreclosure. Now before the court is Atlantic's motion to dismiss the complaint. (ECF no. 6) Because this action is barred by the *Rooker-Feldman* doctrine and principles of *res judicata,* and because Count 2 otherwise fails to state a claim, the motion is granted, and the complaint will be dismissed with prejudice.

1.  **State foreclosure action**

On February 7, 2014, Atlantic filed an amended complaint in foreclosure in the Superior Court of New Jersey, Chancery Division, Passaic County. *Atlantic Stewardship Bank v. Siljee,* No. F-105244-13. (ECF no. 10-2) The foreclosure complaint alleged that Atlantic extended Siljee a $450,000 business

loan secured by a mortgage on Siljee's investment property at 21 Bird Avenue, Clifton, New Jersey (the "Bird Avenue Loan"). In addition, it alleges that Atlantic held a $250,000 residential mortgage on Siljee's home at 40 Grover Drive, Wayne, New Jersey (the "Grover Drive Loan"). Both were alleged to be in default.

On November 19, 2014, the State court entered a Final Judgment in Foreclosure in the sum of $492,672.13 on the Bird Avenue Loan and $216,959.56 on the Grover Drive Loan. (ECF no. 10-3) This was a default judgment, which recited that Siljee had filed no Answer. A Sheriff's sale was ordered.

On July 13, 2015 (four months after filing this federal action), Siljee filed a motion in state court to set aside the default judgment of foreclosure. (ECF no. 10-4) The motion asserted that Siljee had not received proper notice and cited the New Jersey Fair Foreclosure Act. It also asserted that the foreclosure was defective because Atlantic was not the true holder of the mortgage, and therefore "lacked standing to file the foreclosure complaint." The sheriff's sale of the properties was adjourned while the motion was pending.

On August 31, 2015, the state court entered an order and opinion denying the motion to set aside the default judgment. (ECF no. 10-6) The court found, based on the proofs submitted, that defendant had provided the requisite notice. The court accepted the affidavit of Atlantic's vice president to the effect that Atlantic originated the mortgages, remained in continuous possession of the note and mortgage, and possessed standing to foreclose. In response, the court found, Siljee offered no adequate explanation, "from a factual standpoint."

On September 8, 2015, the Bird Avenue property was sold at auction. On December 1, 2015, after a trip to bankruptcy court and an order vacating the automatic stay (ECF no. 10-8 at 76), the Grover Drive property was sold at auction. (ECF no. 10-8 at 84)

On December 30, 2015, Siljee moved in the foreclosure action to set aside the sheriff's sale of the Grover Drive property. (ECF no. 10-7) On

2

February 3, 2016, the state court denied the motion. (ECF no. 10-9) Siljee appealed, but apparently there has been no disposition as yet. (ECF no. 10-10)

### 2.   This federal court action

Siljee filed the complaint in this federal court action (ECF no. 1) on March 10, 2015, some fourth months after the entry of final judgment in the state foreclosure action. It focuses on the Grover Drive Property (the "Subject Property," *see* Cplt. ¶¶ 1, 2).

Count 1 asserts a claim of breach of contract. It alleges that the loan was transferred to a securitized trust, that the mortgage is separated from the note, and that no assignment of the mortgage is recorded with the county clerk. Count 1 claims damages because "Plaintiffs had to expend money to determine the proper parties in interest by purchasing a securitization audit," and it asserts that these lapses by defendant constitute failures of "conditions precedent to the enforcement of the MORTGAGE." (ECF no. 1 at 8–9)

Count 2 asserts a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*  Without giving dates or particulars, it alleges that plaintiffs sent Atlantic a Qualified Written Request ("QWR") to which Atlantic failed to respond. This count asserts that plaintiff is owed $2,000 in statutory damages for an untimely response, plus actual damages. The only actual damages alleged are the "expend[iture of] money to determine the correct identity of the actual parties in interest that would have been unnecessary had ATLANTIC timely complied with the RESPA statute." It further alleges that Atlantic's noncompliance has been widespread. (ECF no. 1 at 9–10)

Count 3 seeks to "quiet title" to the Grover Drive property. It alleges that assignments of the Mortgage are unrecorded, and that "slanders of title have arisen ... due to the use of securitization." The "chain of title" is allegedly "broken, making full title insurance impossible and a difficult sale of the home without this Quiet Title Action." Count 3 reasserts the breach of contract allegations of Count 1. It then asserts that Atlantic's interests are inferior, and that plaintiffs "are credibly informed and believe that Defendants are making a

claim against Plaintiffs' interest in the Subject Property." Count 3 seeks a judgment barring and estopping Atlantic from having or claiming any right or title to the premises. (ECF no. 1 at 11–12)

Count 4 seeks a declaratory judgment that the mortgage is void, that it does not secure the note, and that Atlantic has abandoned its interest in the property.

## II.   Standard on a motion to dismiss

Defendants have moved to dismiss the Complaint for lack of jurisdiction, citing the *Rooker-Feldman* doctrine (*see infra*). Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

Defendants have also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515

F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In connection with the motions, defendants have attached records of the state court foreclosure proceeding. These are cited, not for the facts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties, and the rulings of the state court. Such records are subject to judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### III. Analysis

#### 1. *Rooker-Feldman*

Defendants first move, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

A federal district court does not sit to hear appeals from state court judgments. *Rooker-Feldman* operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See also B.S. v. Somerset Cnty.*, 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284, 125 S.Ct. 1517 (2005).

The *Rooker-Feldman* doctrine applies when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that

6

judgment ineffectual." *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). Thus *Rooker-Feldman* holds that lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *Feldman, supra; Rooker, supra; Guarino v. Larsen*, 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992).

This case involves a "state-court judgment[] rendered before the district court proceedings commenced." *Exxon Mobil*, 544 U.S. at 284. A final judgment of foreclosure was entered in New Jersey Superior Court on November 19, 2014. That state court judgment well preceded the filing of this action on March 10, 2015.[1]

The question remaining is whether the claims in this federal court action were previously adjudicated in, or are inextricably intertwined with, that state foreclosure proceeding. The state foreclosure judgment necessarily decided in Atlantic's favor the following essential elements: the validity of the note and mortgage; the alleged default; and Atlantic's right to foreclose (which would

---

[1] That the sheriff's sale had not yet taken place does not detract from the judgment's finality for purposes of *Rooker-Feldman*:

> That the foreclosure judgment had been entered is sufficient to invoke *Rooker–Feldman*. Under New Jersey law, a mortgage foreclosure suit determines the right to foreclose and the amount due on the mortgage. *Sheerer v. Lippman & Lowy*, 125 N.J.Eq. 93, 4 A.2d 273 (E. & A. 1939); *Central Penn Nat'l Bank v. Stonebridge, Ltd.*, 185 N.J. Super. 289, 302, 448 A.2d 498 (Ch. Div. 1982). *See generally* 30A N.J. Prac. Law of Mortgages § 31.25. The foreclosure judgment also entitles the mortgagee to recover, by way of Sheriff's sale, the amount due from the land subject to the mortgage. *See* N.J.S.A. 2A:50–36; *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 383 N.J. Super. 562, 570, 893 A.2d 1 (App. Div. 2006) *rev'd on other grounds by* 190 N.J. 342, 921 A.2d 417 (2007). Indeed, the terms of a mortgage foreclosure judgment will include "an order to sell so much of the mortgaged premises as will be sufficient to satisfy the mortgage and subordinate liens ... and that an execution issue ... commanding the [sheriff] to make sale...." 30A N.J. Prac. Law of Mortgages § 31.25.

*Patetta v. Wells Fargo Bank, NA*, Civ. No. 09-2848, 2010 WL 1931256, at *7 (D.N.J. May 13, 2010).

include its standing by assignment or otherwise). *See Great Falls Bank v. Pardo,* 622 A.2d 1353, 1356 (N.J. Super. Ct. Ch. Div. 1993). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS,* 75 F.3d at 840. As to federal actions following mortgage foreclosures, the case law gives some guidance as to what issues are actually adjudicated or inextricably intertwined.

*In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009), for example, considered a post-foreclosure federal claim for rescission of the mortgage. A finding that no valid mortgage existed, the Court held, would eliminate the basis for the prior foreclosure judgment. Such a claim is an easy case for application of *Rooker-Feldman*. A federal claim that the state foreclosure court entered its judgment in the absence of personal jurisdiction is likewise barred by *Rooker-Feldman*. Because such a plaintiff "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained," his claim is inextricably intertwined with the state proceedings. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005). *See also Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 92 (3d Cir. 2005) (barring post-foreclosure federal claim for rescission of mortgage and damages); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 153 (3d Cir. 2008) (barring a claim for "redress" of state court judgment in a foreclosure action).

Under these precedents, Count 3 (quiet title) and Count 4 (declaratory judgment) are clearly barred, as the issues essential to them were actually adjudicated in the state foreclosure action. To hold—as Siljee asks this Court to do—that the mortgage was not valid, that Atlantic is not the mortgage holder, that Atlantic's position is junior to that of Siljee, or that Siljee owns the property free and clear of any lien, would in effect declare the foreclosure judgment to be invalid. It would be tantamount to a declaration "that the state

courts' default judgments were improperly obtained." *Knapper*, 407 F.3d at 581.

The Count 1 breach of contract claim, if not actually adjudicated in, is certainly closely intertwined with, the state foreclosure. It asserts that flaws in the securitization, recordation, or chain of title forced Siljee to expend money on a "securitization audit." Its essence, however, is that the mortgage is invalid or that Atlantic has no standing to assert it. The alleged "breaches" of the conditions of the mortgage, according to Count 1, are failures of "conditions precedent to the enforcement of the MORTGAGE." (ECF no. 1 at 9) Any such contention is closed off by the final judgment of foreclosure.

Count 2 (RESPA violation) stands on a separate footing. It appears to be a modest claim for damages based upon failure to respond to a QWR. Such noncompliance with RESPA does not implicate the validity of the mortgage or Atlantic's standing. It is not inconsistent with the existence of a final judgment of foreclosure. Where the federal plaintiff presents "some independent claim," *i.e.*, one that does not implicate the validity of the state court judgment, the *Rooker-Feldman* doctrine does not apply. *Exxon Mobil*, 544 U.S. at 292 (quoted in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547–48 (3d Cir. 2006)).[2]

Counts 1, 3, and 4, then, are claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. They are barred by *Rooker-Feldman*.

### 2. Res Judicata

Because Count 2, at least, may survive *Rooker-Feldman*, I move from the

---

[2]   Count 2 does, however, attempt to bring in through the back door Siljee's theory that Atlantic is not the true holder of the mortgage. The damages claimed arise from the trouble and expense of determining "the correct identity of the actual parties in interest." That can only refer to Siljee's theory, contrary to the final judgment of foreclosure, that Atlantic lacks standing to foreclose.

Rule 12(b)(1) component of the motion to the Rule 12(b)(6) component and consider the application of *res judicata* doctrines. *Res judicata* furnishes alternative grounds for dismissal of Counts 1, 3, and 4, as well.

Claims that survive scrutiny under *Rooker-Feldman* may nevertheless be barred by doctrines of *res judicata*. *See Ayres-Fountain*, 153 F. App'x at 93 ("[E]ven if review of the complaint were not barred by *Rooker–Feldman*, we agree with the District Court that Ayres–Fountain's claims were barred by res judicata.").[3] I find that to be the case here. Although *res judicata* is an affirmative defense, it may be considered on a motion to dismiss if its applicability can be determined from the face of the complaint and documents properly considered on a Rule 12(b)(6) motion. The New Jersey doctrines of claim preclusion and the entire controversy rule furnish additional and alternative grounds for dismissal.

### a. New Jersey doctrine of claim preclusion and the entire controversy rule

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999)

---

[3]  When a claim is found to be "independent" rather than intertwined for *Rooker-Feldman* purposes, it may nevertheless be barred by *res judicata*. Upon completing the *Rooker-Feldman* analysis and confirming that it possesses jurisdiction, the court should then consider "whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 292.

This Circuit has adopted that two-step approach. *Madera*, for example, after applying *Rooker-Feldman* to bar a claim for rescission, then considered a cause of action for damages based on the title insurer's alleged failure to disclose the correct title insurance charge, in violation of the Truth in Lending Act ("TILA"). As to that claim, *Madera* did not apply *Rooker-Feldman*, but proceeded to the merits of the bankruptcy court's grant of summary judgment. 586 F.3d at 232. In *Easley v. New Century Mortgage Corp.*, 394 F. App'x 946 (3d Cir. 2010), the Court upheld the application of *Rooker-Feldman* to claims that, if granted, would imply that the foreclosure judgment was invalid. Other claims, however, were not decided by the state court and were based on "allegations of fraud, deception and other wrongs which pre-dated the foreclosure action," as to which plaintiff sought consequential damages. *Id.* at 948. These were not so clearly intertwined with the foreclosure judgment as to be barred by *Rooker-Feldman*. *Easley* held, however, that the claims not barred by *Rooker-Feldman* were barred by *res judicata*.

("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that state is New Jersey.

New Jersey claim preclusion law, like federal law, has three essential elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991) (state law); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (federal law). If those three requirements are met, then the doctrine bars "the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen*, 449 U.S. at 94, 101 S. Ct. at 414; *Watkins*, 591 A.2d at 599 ("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined.").

Claim preclusion in the traditional sense tends to be subsumed by New Jersey's "entire controversy" rule. The entire controversy rule emphasizes, not just claims within the scope of the prior judgment, but all *claims and parties* that a party *could have joined* in a prior case based on the same transaction or occurrence. The entire controversy doctrine thus "requires a party to bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 513 (N.J. 1995)).

> We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883,

11

> 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989); see also N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.")....

*Ricketti v. Barry,* 775 F.3d 611, 613 (3d Cir. 2014).

Like traditional res judicata, the state entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). It extinguishes any subsequent federal-court claim that could have been joined, but was not raised in the prior state action:

> Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action. The doctrine has three purposes: (1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay. *See DiTrolio v. Antiles,* 142 N.J. 253, 662 A.2d 494, 502 (N.J. 1995). As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties.

*Paramount Aviation Corp. v. Agusta,* 178 F.3d 132, 137 (3d Cir. 1999).

The preclusive effect of the rule is explicit: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." N.J. Ct. R. 4:30A. But the rule applies only to claims that could have been permissibly joined in the prior proceeding. And the entire controversy rule itself notes the limitations on claims in a foreclosure proceeding: "... except as otherwise provided by R. 4:64-5 (foreclosure actions) ...." *Id.*

12

The cited rule, N.J. Ct. R. 4:64-5, limits permissible claims in mortgage foreclosure actions to those which are "germane" to the foreclosure.[4] It follows, therefore, that only claims germane to the prior mortgage foreclosure will be precluded in a later action. If claims were not "germane" to the foreclosure, then they could not have been brought in that action. And if the litigant had no opportunity to present them in the prior action, then they cannot be precluded by the prior judgment.

As to what claims are "germane," the seminal case is *Leisure Technology–Northeast v. Klingbeil Holding Co.*, 349 A.2d 96 (N.J. Super. Ct. App. Div. 1975). "The use of the word 'germane' in the language of the rule," said the Appellate Division, "undoubtedly was intended to limit counterclaims in foreclosure actions to claims *arising out of the mortgage transaction* which is the subject matter of the foreclosure action." 349 A.2d at 98–99 (emphasis added). There, the foreclosure defendant/borrower had pled an affirmative defense and counterclaim. The Appellate Division held that "the thrust of the counterclaim is the assertion that plaintiff had breached the underlying agreement in relation to which the mortgage was executed and interfered with defendants'

---

[4]  **4:64-5. Joinder of Claims in Foreclosure**

> Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64-3, unless the court otherwise directs.

Claims that could not have been brought in the first proceeding also include those that were "unknown, unarisen, or unaccrued" at the time. *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 662 A.2d 523, 530 (N.J. 1995) (citations omitted). Those exceptions are not implicated here.

The entire controversy rule applies to parties, as well as claims, that were not joined in the prior action. That aspect of the rule, too, is not relevant here. *See Ricketti, supra* (requiring particular safeguards as to absent parties).

rights under that agreement. In the usually understood sense of the word, these claims were germane to the foreclosure action." 349 A.2d at 99.

> Post-*Leisure Technology,* the germaneness rule has solidified thus:
>
>> Indeed, the Appellate Division has been "clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure." *Sun NLF Ltd. Partnership v. Sasso,* 313 N.J. Super. 546, 713 A.2d 538, 540 (N.J. Super. Ct. App. Div.1998).

*Zebrowski v. Wells Fargo Bank, N.A.*, No. CIV.1:07CV05236JHR, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010) (Rodriguez, J.); *see also Joan Ryno, Inc. v. First Nat. Bank of S. Jersey,* 506 A.2d 762, 766 (N.J. Super. Ct. App. Div. 1986).

A Third Circuit case persuasively penned by Judge Fuentes (himself a product of the New Jersey bench and bar) illustrates the "germaneness" issue as it bears on the entire controversy doctrine. In *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortgage Corp.*, 446 F. App'x 469 (3d Cir. 2011), a foreclosure action went to final judgment. After bankruptcy-related delays that staved off a sheriff's sale, the borrower/owner paid a reinstatement fee and obtained a dismissal of the foreclosure. The borrower then brought a putative class action in federal court, claiming that the lender had charged excessive fees in connection with reinstatement.[5] The district court, applying the entire controversy doctrine, dismissed the case on a Rule 12(b)(6) motion. The Third Circuit affirmed.

Judge Fuentes found that the borrower's claims could have been brought in the foreclosure under New Jersey practice:

---

[5]   The federal court causes of action asserted in *Coleman* included (1) breach of contract; (2) intentional misrepresentation; (3) negligence; (4) breach of duty of good faith and fair dealing; (5) unjust enrichment; (6) unfair and deceptive assessment and collection of fees; (7) violation of the Fair Foreclosure Act ("FFA"); (8) excessive fees in violation of New Jersey Court Rule R 4:42–9(a)(4); (9) excessive taxed costs in violation of various state statutes; (10) violation of New Jersey's Consumer Fraud Act ("CFA"); (11) forfeiture of interest; and (12) violation of the Truth–In Consumer Contract, Warranty and Notice Act.

14

> Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action. *Leisure Technology–Northeast, Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96, 98 (1975). Here, Coleman's claims arose directly out of a reinstatement quote that was provided to her as an alternative to a foreclosure sale, and the excessive fees allegedly charged by Chase would not have been charged but for the foreclosure action. Accordingly, Coleman's causes of action arose out of and were germane to the original foreclosure action.

446 F. App'x at 472. Because the claims would have been "germane" in the sense that they arose from the relevant mortgage transaction, they were now barred by the entire controversy doctrine. *See also Dennis v. MERS/Merscorp Mortg. Elec. Registration Sys., Inc.*, No. CIV.A. 11-4821 JLL, 2011 WL 4905711, at *1 (D.N.J. Oct. 13, 2011) (barring claims by plaintiff who had defaulted in state foreclosure action that "as a result of defective assignments of her mortgage, all claims to the property are void").[6]

### b. Application to this case

The entire controversy rule applies here. The state court mortgage foreclosure was "a previous state-court action involving the same transaction," *i.e.*, the mortgage, the default, and the foreclosure itself. *Bennun*, 941 F.2d at 163 (3d Cir. 1991). The subject matter of that prior action necessarily embraced that of this federal action, and the parties are the same.

In the alternative, the three prerequisites to claim preclusion apply here.

(1) There was a final judgment on the merits.

(2) The prior suit involved the same parties or their privies.

(3) The subsequent suit (*i.e.*, this one) is based on the same transaction or occurrence. It grows out, and is based on, the mortgage and Atlantic's status as the party with standing to foreclose. *Watkins*, 591 A.2d at 599.

It follows, then, that claim preclusion and the entire controversy doctrine

---

[6] A case reaching the opposite result is *In re Mullarkey*, 536 F.3d 215, 229-30 (3d Cir. 2008). There, however, the court determined that the plaintiff's federal cause of action truly arose, not from the foreclosure, but from alleged misrepresentations in related bankruptcy proceedings.

extinguish any subsequent federal-court claim that either was decided, or else could have been joined but was not raised in the prior foreclosure action. Counts 1, 3, and 4, for the reasons expressed above, are identical or closely related to the foreclosure claims. *See Guaba v. World Sav. Bank,* No. CIV.A. 14-2408 MAS, 2014 WL 6870995, at *1 (D.N.J. Dec. 3, 2014).

Count 2, the RESPA claim, could likewise have been raised. Its subject matter is a QWR in which (it is implied) Siljee sought answers to his questions about Atlantic's standing to foreclose and the chain of title of the mortgage. It is therefore germane to the prior action.

As to any claims that survive *Rooker-Feldman,* the motion to dismiss on grounds of *res judicata* and the entire controversy rule is granted.

### 3. Failure to state a claim

I briefly consider, in relation to Count 2, the sufficiency of pleading under *Iqbal* and *Twombly*. Count 2 alleges that Siljee sent a QWR to Atlantic. The contents of the QWR, the information it asked for, and the date of service are not stated.

Count 2 alleges that a timely response to the QWR would have saved Siljee the trouble and expense of determining "the correct identity of the actual parties in interest." The meaning of this is not stated, and the "actual parties" are not identified. This may refer to allegations, elsewhere in the complaint, relating to the mortgage's securitization. Those allegations, however, are conditional, not factual. *E.g.,* Cplt. ¶ 50 ("Plaintiffs allege that if the LOAN was sold, turned into a security, and pooled, the certificate holder(s) may no longer claim that they are a real party in interest."); Cplt. ¶ 51 ("Plaintiffs allege that if a securitization did occur, the NOTE cannot be re-attached to the MORTGAGE through adhesion."). No such securitization is alleged factually. And any contention that Atlantic is not the "actual party in interest" is contrary to the final judgment of foreclosure.

In the alternative, then, to the extent Count 2 survived the *Rooker-*

16

and res judicata analyses, I would dismiss it for failure to state a claim.

## CONCLUSION

Defendant's motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction under the *Rooker-Feldman* doctrine are GRANTED. To the extent that any claims, or parts of claims, seek relief that does not require negation of the foreclosure judgment, they are nevertheless dismissed pursuant to Fed. R. Civ. P. 12(b)(6) on grounds of res judicata, the entire controversy rule, and, as to Count 2, failure to state a claim.

Dated: May 12, 2016

_____
KEVIN MCNULTY
United States District Judge